**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KENYETTA GREEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 1:26-cv-10467** |
| | ) | |
| **v.** | ) | **Jury Trial Demanded** |
| | ) | |
| **ADVOCATE HEALTH AND HOSPITALS CORPORATION, d/b/a ADVOCATE TRINITY HOSPITAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff, Ms. Kenyetta Green ("Plaintiff"), by and through undersigned counsel, hereby files this Complaint against Advocate Health and Hospitals Corporation, d/b/a Advocate Trinity Hospital ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), seeking redress for Defendant's race-based discrimination, racial harassment, and retaliation against Plaintiff for engaging in protected activity by opposing discriminatory and harassing conduct.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as Title VII is a federal statute.

3. Venue properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because Defendant operates and transacts business in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to suit under Title VII have occurred or been satisfied.

5. On or about July 9, 2026, Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), attached hereto as Exhibit "A."

6. On or about August 25, 2026, the EEOC issued, and Plaintiff received, a Notice of Right to Sue, attached hereto as Exhibit "B."

7. Plaintiff filed this Complaint within ninety (90) days of her receipt of the EEOC's Notice of Right to Sue.

## PARTIES

8. Plaintiff, Ms. Kenyetta Green, is an African American female individual and resident of Cook County, Illinois.

9. Defendant, Advocate Health and Hospitals Corporation, d/b/a Advocate Trinity Hospital, is a corporation with its principal place of business located at 2320 East 93rd Street, Chicago, Illinois 60617-3909.

10. At all times relevant, Plaintiff was an employee and Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

11. At all times relevant, Defendant employed at least fifteen (15) employees and was a covered employer under Title VII.

## BACKGROUND FACTS

12. Plaintiff was employed by Defendant as an Environmental Services (EVS) Operating Room Housekeeper from on or about November 21, 2021, until her unlawful termination on or about July 1, 2026, a tenure of approximately four years and eight months.

13. During her employment, Plaintiff performed essential housekeeping and environmental services duties for Defendant's Operating Room (OR) and related hospital units.

14. Plaintiff's job required her to maintain cleanliness standards, manage linen collection, perform patient discharge cleaning, clean operating rooms, and manage additional environmental services tasks. Plaintiff worked her assigned shifts independently and took pride in her work.

15. Throughout her employment, Plaintiff consistently performed her job duties and was a reliable, conscientious employee.

16. In or around October 2025, management at Defendant's facility underwent a change. Rebecca Coepuos, a Hispanic female nurse manager, assumed a management role following the retirement of the previous supervisor.

17. Upon assuming her management role, Ms. Coepuos began excessively scrutinizing Plaintiff's work, criticizing Plaintiff over insignificant matters, and holding Plaintiff to standards that were not applied to other employees. These actions began immediately and set the tone for Coepuos's discriminatory conduct toward Plaintiff based on her race.

18. Ms. Coepuos repeatedly and insistently required Plaintiff to collect linens every single day despite the fact that Defendant's management had previously agreed that daily linen collection was not part of Plaintiff's assigned duties except under limited circumstances.

19. Ms. Coepuos continued to demand daily linen collection even though this requirement was not imposed on other employees and contradicted prior management policy.

20. The work environment created by Ms. Coepuos became increasingly hostile and discriminatory.

21. Plaintiff frequently worked alone covering approximately eighteen to twenty surgical cases per day.

22. Despite this substantial workload and Plaintiff's consistent completion of her assigned responsibilities, Ms. Coepuos continued to criticize Plaintiff's performance, citing insignificant matters and imposing standards not applied to other employees.

23. In addition to this discriminatory treatment, Ms. Coepuos subjected Plaintiff to racially offensive and humiliating conduct. In front of coworkers, Ms. Coepuos referred to Plaintiff as "the Black Caroline" after comparing Plaintiff to a White nurse named Caroline.

24. This comment was made intentionally to demean and humiliate Plaintiff based on her race and ethnicity.

25. Plaintiff reported this racially offensive comment to her supervisor, Ruta McLendon, an African American female manager.

26. Plaintiff explained to Ruta that she found the comment humiliating, discriminatory, and unprofessional. Ruta instructed Plaintiff to speak directly with Ms. Coepuos about the comment.

27. Plaintiff complied with this instruction and spoke to Ms. Coepuos directly.

28. However, Rebecca Coepuos's discriminatory and harassing treatment of Plaintiff did not improve following this report.

29. Approximately one week after the "Black Caroline" incident, Ms. Coepuos issued another degrading and humiliating command to Plaintiff.

30. Ms. Coepuos instructed Plaintiff to "get down on your hands and knees" to scrape stickers from the floor, despite this task not being part of Plaintiff's normal job duties.

31. Plaintiff found this command deeply degrading and immediately reported the incident to Ruta McLendon.

32. Upon hearing of this incident, Ruta McLendon advised Plaintiff to report the matter to Defendant's Human Resources department if Plaintiff wished to pursue a formal complaint.

33. On or about March 7, 2026, Plaintiff submitted a formal written grievance through Defendant's Workday Human Resources system.

34. In her formal written grievance dated on or about March 7, 2026, Plaintiff alleged race discrimination, harassment, retaliation, and false accusations.

35. Plaintiff reported that Ms. Coepuos had repeatedly criticized Plaintiff's work without evidence, falsely accused Plaintiff of failing to perform her duties, and publicly blamed Plaintiff during hospital safety huddles.

36. Plaintiff also reported the humiliating "Black Caroline" comment and the degrading command to scrape stickers from the floor.

37. Plaintiff requested that Human Resources investigate Ms. Coepuos's conduct, investigate false allegations that had been made against her, and review the complaints being lodged against her.

38. Plaintiff participated in an initial Human Resources conference regarding her complaint on or about April 29, 2026.

39. Despite Plaintiff's detailed complaints to both Ruta McLendon and Defendant's Human Resources department, the discriminatory treatment and retaliation continued unabated.

40. Following Plaintiff's protected complaints to management and Human Resources, Rebecca Ms. Coepuos remained highly critical of Plaintiff's work.

41. Ms. Coepuos continued documenting insignificant issues and focused almost exclusively on linen collection despite there being no legitimate concerns regarding the quality of Plaintiff's operating room cleaning or environmental services work.

42. This continued scrutiny and documentation were clearly retaliatory responses to Plaintiff's protected activity.

43. Following her complaints, Plaintiff received a written disciplinary notice for tardiness in or around April or May 2026 from her supervisor Ruta McLendon.

44. Despite Plaintiff's prompt correction of every concern that management raised, she continued to receive increased scrutiny and documentation regarding her performance.

45. In stark contrast, Plaintiff observed that other non-African American employees who engaged in similar conduct to that for which Plaintiff was being disciplined received no comparable discipline.

46. Ms. Coepuos continued her discriminatory campaign against Plaintiff through public reporting during hospital safety huddles.

47. Ms. Coepuos publicly reported during these meetings that Plaintiff, as an EVS employee, had failed to collect linens.

48. These public accusations unfairly singled Plaintiff out in front of hospital leadership and were designed to damage Plaintiff's professional reputation and standing.

49. After Ms. Coepuos stopped communicating with Plaintiff directly and the public attacks began, a newly hired OR educator who worked in coordination with management began criticizing Plaintiff regarding the very same linen collection issues, issues that Coepuos had been focused on since her arrival.

50. This newly hired OR educator had not even introduced herself to Plaintiff before beginning to criticize her work.

51. Plaintiff reasonably believed that Ms. Coepuos had influenced and poisoned this other member of management against her.

52. On or about June 13, 2026, while Plaintiff was working her regular Saturday assignment, an assignment that she had successfully covered every Saturday for nearly two years without similar complaints, Defendant's management alleged that the operating room unit

was dirty and that Plaintiff had not been present during her shift, which Plaintiff knew to be false.

53. Throughout her entire shift on June 13, 2026, Plaintiff completed multiple patient discharges, repeatedly returned to clean additional messes that had been created by patients, and performed her routine and assigned cleaning duties.

54. Plaintiff's supervisor Ruta McLendon visited the unit during Plaintiff's shift on June 13, 2026, as she routinely did, and advised Plaintiff of the remaining patient discharges and rooms that required final cleanup, which Plaintiff completed.

55. Plaintiff was scheduled to work until 2:30 p.m., however Defendant's management inspected the unit at approximately 1:00 p.m., before Plaintiff's shift had ended and before Plaintiff had completed her final walkthrough and inspection of the unit.

56. Neither Ms. Coepuos, the nurse manager, nor anyone else reported any concerns to Plaintiff's supervisor through the normal chain of command regarding the alleged condition of the unit.

57. Additionally, no one communicated to Plaintiff that they believed the unit required additional cleaning.

58. Plaintiff requested that Ruta McLendon investigate the incident and confirm that she had been performing her assigned duties throughout the day and that the allegations were unfounded.

59. Despite Plaintiff's explanation of the facts and her reasonable request for an investigation supported by surveillance footage, Defendant failed to conduct a meaningful investigation into the June 13 incident.

60. Defendant disregarded Plaintiff's explanation of events and instead relied solely on allegations that Plaintiff had repeatedly disputed and that she maintained were contradicted by available surveillance footage, as the basis for her termination.

61. Before her employment was terminated, Plaintiff requested a meeting with Quland Drake, who was responsible for Defendant's employee resolution process.

62. Despite Plaintiff's reasonable request for this meeting, no such meeting occurred.

63. On or about July 1, 2026, Ruta McLendon terminated Plaintiff's employment in the presence of Quland Drake, the operation director.

64. Defendant stated that Plaintiff's termination was based on the June 13, 2026 incident and alleged performance concerns.

65. However, these reasons were pretextual and not the true basis for Plaintiff's discharge.

66. The true basis for Plaintiff's termination was her race and her protected activity in complaining about racial discrimination and harassment.

67. Plaintiff had repeatedly complained to both Ruta McLendon and Human Resources about Rebecca Coepuos's discriminatory and retaliatory conduct, yet Defendant proceeded to terminate her employment based on unsubstantiated allegations.

68. Rather than stopping the discrimination and harassment, Defendant permitted the hostile and discriminatory conduct to continue, failed to adequately investigate Plaintiff's complaints, continued documenting unsupported allegations against Plaintiff, and ultimately terminated Plaintiff's employment in retaliation for her protected complaints of racial discrimination and harassment.

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964**
**(Hostile Work Environment Based on Race)**

69. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

70. Defendant subjected Plaintiff to a hostile work environment based on her race through racial harassment, discriminatory treatment, and humiliating conduct perpetrated by Rebecca Coepuos and condoned or tolerated by management.

71. The hostile work environment was characterized by repeated racial slurs including the "Black Caroline" comment; excessive and discriminatory scrutiny of Plaintiff's work; application of standards not applied to similarly situated non-African American employees; degrading commands such as the instruction to scrape stickers from the floor on hands and knees; false and unsupported allegations regarding Plaintiff's work performance; and public humiliation during hospital safety huddles.

72. This conduct was severe or pervasive, was based on Plaintiff's race, was unwelcome, and was subjectively and objectively offensive.

73. Defendant knew or should have known of the hostile conduct through Plaintiff's reports to her supervisor Ruta McLendon and through Plaintiff's formal written grievance to Human Resources filed on or about March 7, 2026.

74. Defendant failed to take prompt and appropriate corrective action in response to these complaints.

75. By virtue of the conduct alleged herein, Defendant violated Title VII by subjecting Plaintiff to a hostile work environment based on race, in violation of 42 U.S.C. § 2000e et seq.

76. As a direct and proximate result, Plaintiff has suffered and continues to suffer loss of earnings, loss of benefits, emotional distress, and other compensatory damages.

## COUNT II
## Violation of Title VII of the Civil Rights Act of 1964
## (Race-Based Discrimination)

77. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

78. Plaintiff was qualified to perform the essential functions of her position as an Environmental Services Operating Room Housekeeper, as demonstrated by her nearly four years and eight months of employment during which she consistently performed her job duties.

79. Defendant subjected Plaintiff to unlawful termination.

80. Plaintiff's race was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

81. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on her race in violation of Title VII, 42 U.S.C. § 2000e et seq.

82. As a direct and proximate result, Plaintiff has suffered and continues to suffer loss of earnings, loss of benefits, emotional distress, and other compensatory damages.

**COUNT III**
**Violation of Title VII of the Civil Rights Act of 1964**
**(Retaliation)**

83. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

84. Plaintiff engaged in protected activity under Title VII by reporting racial discrimination and harassment to her supervisor Ruta McLendon and by filing a formal written grievance with Defendant's Human Resources department on or about March 7, 2026, alleging race discrimination, harassment, retaliation, and false accusations.

85. Defendant knew that Plaintiff had engaged in protected activity.

86. Following Plaintiff's protected complaints, Defendant subjected Plaintiff to adverse employment actions including increased scrutiny, heightened documentation of alleged performance issues, disciplinary action for tardiness (which other employees engaged in without comparable discipline), public accusations during hospital safety huddles, alleged performance concerns on June 13, 2026, and ultimately termination on July 1, 2026.

87. The timing of these adverse actions, commencing shortly after Plaintiff's reports to Ruta McLendon and escalating after Plaintiff's formal grievance on or about March 7, 2026, demonstrates that Plaintiff's protected activity was a but-for cause of Defendant's adverse employment actions.

88. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff in violation of Title VII, 42 U.S.C. § 2000e et seq.

89. As a direct and proximate result, Plaintiff has suffered and continues to suffer loss of earnings, loss of benefits, emotional distress, and other compensatory damages.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award the following relief:

a. Back pay and other lost compensation

b. Payment of interest on all recoverable back pay and other monetary losses

c. Front pay;

d. Lost employment benefits;

e. Compensatory damages, including damages for emotional distress, to the extent authorized by law;

f. Punitive damages to the extent authorized by law;

g. Reasonable attorneys' fees and costs to the extent authorized by law

h. Prejudgment and post-judgment interest to the extent authorized by law; and

i. Any other relief that the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 29, 2026

***/s/ Travis P. Lampert***
Travis P. Lampert, Esq.
Bar No. 99843
**Sulaiman Law Group Ltd.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 581-5456
Fax (630) 575 - 8188
tlampert@atlaslawcenter.com
*Attorney for Plaintiff*